UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------

In re

    SELECT TREE FARMS, INC.                      12-10669 B

                Debtor                          <u>DECISION & ORDER</u>
-----------------------------------------------------
MORRIS L. HORWITZ, *as Chapter 7*
*of Select Tree Farms, Inc.*

        Plaintiff

    v.                                        AP 15-1014 CLB

Clair A. Montroy, III

        Defendant
-----------------------------------------------------

                      Morris L. Horwitz, Esq.
                      PO Box 716
                      Getzville, NY 14068
                      Attorney for Trustee

                      Clair A. Montroy, III, Esq.
                      4213 N. Buffalo Road
                      Orchard Park, NY 14127
                      Pro se


Bucki, Chief U.S.B.J., W.D.N.Y.

      The present dispute involves the extent to which an attorney has become an initial transferee of funds deposited into his trust account from the post-petition assets of a debtor in Chapter 11.

      From its incorporation in 2008, Select Tree Farms, Inc., was engaged in the business of growing and selling trees. As president of the corporation, George A. Schichtel managed operations that were primarily conducted in Western New York and in New Jersey. On March 7, 2012, separate petitions for relief under Chapter 11 were filed on behalf of Select Tree Farms and jointly on behalf of George Schichtel and his wife, Debra Schichtel. The corporation ultimately converted its case into a proceeding under Chapter 7 on February 10, 2014. On behalf of himself and the estate of his

deceased wife, George Schichtel then converted their personal case to Chapter 7 on October 22, 2014.

Shortly before the filing of the bankruptcy petitions, Select Tree Farms issued six checks that were payable to three of the corporation's creditors in New Jersey. George Schichtel signed each of these checks on behalf of the corporation. Presumably based on a belief that the underlying claims had been paid, Select Tree Farms did not list any of the payees as creditors in its bankruptcy schedules. Due to insufficiency of funds, however, the drawee bank dishonored each of the six checks. The three creditors then filed complaints which resulted in the prosecution of criminal charges under New Jersey law against George Schichtel.

Without authorization from the Bankruptcy Court, Schichtel hired an attorney, Clair A. Montroy, III, to defend the outstanding criminal charges. On June 23, 2012, Schichtel delivered to Montroy a check in the amount of $2,000, which Montroy then deposited into his special escrow account. This check was drawn on the checking account of Select Tree Farms, Inc., and indicated on its face that Select Tree Farms was operating as a debtor in possession. Ultimately, Montroy negotiated a settlement whereby the criminal charges would be dismissed on condition that Schichtel make restitution to two of the complainants. To this end, on January 22, 2013, Montroy disbursed $1,151.92 from his escrow account to one of the creditors. Then on February 15, 2013, Schichtel delivered a check in the amount of $6,000 that Montroy deposited into the special escrow account. Again drawn on the debtor in possession account of Select Tree Farms, this check was honored by the drawee bank on February 20, 2013. Contemporaneously, Montroy disbursed $4,364 from the escrow account to another of the complaining creditors. Altogether, therefore, Schichtel caused Select Tree Farms to entrust $8,000 to Montroy. From this $8,000, Montroy disbursed $5,515.92 to creditors. Montroy and Schichtel anticipated that the remainder of $2,484.08 would be paid to Montroy on account of his charges for legal fees and disbursements.

Morris L. Horwitz now serves as the Chapter 7 trustee of Select Tree Farms, Inc. On January 10, 2015, he filed a motion to compel the disgorgement of all funds that Select Tree Farms may have paid to Clair A. Montroy. In his motion, the trustee argues that because this court never approved Montroy's appointment to serve as counsel, Montroy has no right to retain moneys paid in connection with his representation. Then on February 19, 2015, the trustee commenced an adversary proceeding under 11 U.S.C. §§549 and 550 to avoid the transfer of $8,000 to Montroy. Because the motion requests relief that the trustee also seeks in his adversary proceeding, this court has consolidated its consideration of both matters. Both Montroy and the trustee assert the absence of any material dispute of fact, and agree that the present matter is appropriate for resolution at this time.

Section 549 of the Bankruptcy Code establishes the general right of a trustee to avoid unauthorized post-petition transfers of estate assets:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate – (1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a). In the present instance, the debtor transferred $8,000 after the commencement of its bankruptcy case and without authorization under Title 11 or by this court. To the extent that these funds involved the payment of a pre-petition obligation, they were made outside the ordinary course of the debtor's post-petition activities. Consequently, they were not authorized under 11 U.S.C. §363(c)(1), which only allows transactions "in the ordinary course of business." To the extent that the funds involved a payment on account of legal services, attorney Montroy never obtained the required authorization either to serve as counsel or to receive compensation. Subject to exceptions not here relevant, section 1107(a) of the Bankruptcy Code directs that a debtor in possession "shall perform all the functions and duties . . . of a trustee." Pursuant to 11 U.S.C. § 327, a trustee "with the court's approval, may employ one or

more attorneys."  To a professional person employed under 11 U.S.C. § 327, the Bankruptcy Code allows the Court to authorize compensation "[a]fter notice to the parties in interest and the United States Trustee and a hearing." 11 U.S.C. §330(a)(1). This Court never authorized the appointment of Montroy to serve as counsel, and was never asked even to consider the approval of compensation.

Without authority, Select Tree Farms, Inc., transferred funds that were deposited into a special escrow account and that were later distributed either to pre-petition creditors or to Clair Montroy on account of his legal services.  In his motion and adversary proceeding, the Chapter 7 trustee seeks to recover the entire sum of $8,000 from Mr. Montroy himself.  In determining the extent of Montroy's liability, we need to address three issues.  First, what is the extent of liability as an initial transferee under 11 U.S.C. § 550?  Second, to what extent is the trustee's recovery affected by the time limitations of 11 U.S.C. § 549(d)?  Third, may Montroy ameliorate his liability by now securing a *nunc pro tunc* authorization to serve as special counsel and to receive compensation?

Section 549(a) of the Bankruptcy Code allows a trustee to avoid an unauthorized post petition transfer.  However, we look to 11 U.S.C. §550 to ascertain the liability of a transferee of an avoided transfer.  In relevant part, section 550 provides as follows:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 549 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

In his complaint, the trustee contends that Montroy is an initial transferee of $8,000, and that the estate may therefore recover that entire amount, whether retained by Montroy

or redistributed to a third party creditor. However, as the court noted in *In re Finley Kumble, et al. (Christy v. Alexander & Alexander, Inc.)*, 130 F.3d 52, 57 (2nd Cir. 1997), "[t]he statutory structure confirms that the term 'initial transferee' references something more particular than the initial recipient." For this reason, the Second Circuit has adopted "the 'mere conduit' test for determining who is an initial transferee under § 550(a)(1)." *Id.* at 58. To the extent that an entity serves as a mere conduit of funds, the initial transferee is deemed to be the recipient of funds from that conduit.

In the present instance, assets of Select Tree Farms, Inc., were deposited into an attorney's special trust account. This placement functioned as a declaration that the funds did not necessarily belong to the attorney designated on the account. Rule 1.15 of the New York Rules of Professional Conduct provides that a lawyer may not commingle his own property with "any funds or other property belonging to another person, where such possession is incident to his or her practice of law." RULES OF PROF. CONDUCT, Rule 1.15(a), N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.15(a) in N.Y. JUD. LAW (McKinney Supp. 2011). Rather, "[s]uch funds shall be maintained . . . in a special account or accounts, separate from any business or personal accounts of the lawyer or lawyer's firm, and separate from any accounts that the lawyer may maintain as executor, guardian, trustee or receiver, or in any other fiduciary capacity . . . ." RULES of PROF. CONDUCT, Rule 1.15(b), N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.15(b)(1) in N.Y. JUD. LAW (McKinney Supp. 2011). Thus, Montroy's special trust account served not as a depository of funds belonging to Montroy, but as a conduit of that money from Select Tree Farms, Inc. to its recipient. Whether or not he was properly appointed by this court, Montroy was still obliged to disperse funds only as directed by the client. To the extent that those funds were disbursed to a pre-petition creditor, the "initial transferee" is deemed to be that pre-petition creditor, not Montroy. For the same reason, Montroy will be treated as an "initial transferee" with respect to, but only with respect to any

funds distributed to him as payment of legal fees.[1]  Accordingly, pursuant to 11 U.S.C. § 550(a), the trustee's recovery from Montroy is limited to the funds that he paid to himself from the special escrow account.

A second issue is whether recovery is constrained by the time limitations of 11 U.S.C. § 549(d).  This subdivision states that an action or proceeding under section 549 "may not be commenced after the earlier of — (1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed."  An initial check of $2,000 was deposited into Montroy's special escrow account on or about June 23, 2012, and an additional check of $6,000 was honored and posted into that same account on February 20, 2013.[2]  Subject to exceptions not here relevant, Bankruptcy Rule 7001(a) requires the commencement of an adversary proceeding "to recover money or property" from an entity other than the debtor.  Thus, for purposes of determining the timeliness of this proceeding, we look not to the motion for disgorgement, but to the subsequent adversary proceeding.  Here, because the trustee commenced the adversary proceeding on February 19, 2015, his action is timely with regard to the transfer of $6,000 and any subsequent disbursement of those funds.  We focus instead upon the earlier deposit of $2,000, which occurred more than two years prior to commencement of the adversary proceeding.  This sum of $2,000 was placed into an attorney's special escrow account, which for the reasons stated above, served as a mere conduit.  Hence, for purposes of section 549(d), the transfer occurred when Montroy withdrew funds from his special account.  Because the record does not establish the date of any transfer to

---

[1] The Rules of Professional Conduct expressly contemplate that an attorney's special escrow account may contain fees ultimately paid to counsel: "Funds belonging in part to a client or third person and in part currently or potentially to the lawyer or law firm shall be kept in such special account or accounts, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client or third person, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved." RULES OF PROF. CONDUCT, Rule 1.15(b)(4), N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.15(b)(4) in N.Y. JUD. LAW (McKinney Supp. 2011)

[2] Although Montroy presented the $6,000 check on February 15, the transfer is deemed to occur on the date that the drawee bank honors it. *Barnhill v. Johnson*, 503 U.S. 393 (1992).

Montroy, the court is unable at this time to determine whether the trustee has timely filed a complaint to recover that portion of the initial deposit of $2,000.

Finally, Mr. Montroy requests that the court approve his appointment to serve as counsel, *nunc pro tunc* as of the start of his employment; and that fees be allowed in the amount of funds already received. "*Nunc pro tunc* approval should only be granted in narrow situations and requires that (i) if the application had been timely, the court would have authorized the appointment, and (ii) the delay in seeking court approval resulted from extraordinary circumstances." *In re Keren Ltd. P'ship (Cushman & Wakefield, Inc. v. Keren Ltd. P'ship)*, 189 F.3d 86, 87 (2nd Cir. 1999). We need not now consider the issue of appointment *nunc pro tunc*, however, because the court cannot allow Montroy to retain funds that might compromise a distribution to claims having a higher or equal priority. Even if Montroy were to satisfy the challenging standard for *nunc pro tunc* appointment, administrative expenses of the Chapter 7 trustee would have priority over any administrative claims arising during the pendency of the case in Chapter 11. 11 U.S.C. §507(a)(1)(C). Further, we do not now know whether the debtor's estate will include assets sufficient to satisfy all other expenses in Chapter 11, including those of timely appointed professionals. Because the court had not authorized distributions to Montroy at the time that they were made, section 549 of the Bankruptcy Code allows the Chapter 11 trustee to avoid those transfers. The request for appointment *nunc pro tunc* is deferred indefinitely, until the parties are able to represent that a decision on this request is needed to justify a probable distribution. To the extent that Montroy wishes to protect his right to a distribution, he may file an appropriate proof of administrative claim for the amount of any judgment that the trustee recovers.

Conclusion

An attorney's special escrow account serves as a mere conduit for funds deposited from assets of a debtor in bankruptcy. For purposes of 11 U.S.C. §§ 549 and 550, the transfer is deemed to occur not when funds were transferred into the escrow

account, but when funds were paid from that account.  Accordingly, the initial transferee is deemed to be the recipient of money from the special escrow account, not the attorney in his capacity as escrow agent.  Altogether, at one time or another, the defendant's special escrow account held $8,000 of the debtor's estate assets.  The court will dismiss that portion of the trustee's complaint which seeks to impose liability on Montroy for payments made to pre-petition creditors in the combined amount of $5,515.92. With regard to the balance of funds paid to Montroy, the court will grant judgment to the trustee for $1,636, in as much as that sum would necessarily have derived from the deposit of $6,000 made within two years of the trustee's complaint.  However, we must defer a decision with regard to the other funds paid to Montroy in the amount of $848.08., until such time as the court has opportunity to consider proof regarding the date of transfer from the special escrow account.  The trustee and defendant are directed either to submit stipulations regarding the date of payment, or to schedule an evidentiary hearing on this remaining factual issue.

So ordered.

Dated:   Buffalo, New York             /s/      CARL L.  BUCKI
         July 17, 2015                 Hon.  Carl L.  Bucki, Chief U.S.B.J., W.D.N.Y.